UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILLIAN SMITH,<br><br>        Plaintiff,<br><br>   vs.<br><br>C. BURGDORFF, et al.,<br><br>        Defendants. | 1:17-cv-00634-DAD-GSA-PC<br><br>**FIRST SCREENING ORDER**<br><br>**ORDER DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM, WITH LEAVE TO AMEND (ECF No. 1.)**<br><br>**THIRTY DAY DEADLINE TO FILE AMENDED COMPLAINT** |

**I.    BACKGROUND**

This is a civil action filed by Lillian Smith ("Plaintiff"), a state prisoner proceeding *pro se*. This action was initiated by civil complaint filed by Plaintiff in the Madera County Superior Court on November 18, 2016 (Case #MCV073193). On May 17, 2017, defendants C. Burgdorff, J. Harry, E. Olesky, and B. Wilkins ("Defendants") removed the case to federal court by filing a Notice of Removal of Action pursuant to 28 U.S.C. § 1441(a). (ECF No. 1.)

Plaintiff's Complaint is now before the court for screening. 28 U.S.C. § 1915A.

**II.    SCREENING REQUIREMENT**

The court is required to screen complaints in civil actions in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised

claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal 556 U.S. at 678. While factual allegations are accepted as true, legal conclusions are not. Id. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

### III. SUMMARY OF COMPLAINT

Plaintiff is presently incarcerated at the California Institution for Women in Corona, California. The events at issue in the Complaint allegedly occurred when Plaintiff was incarcerated at the Central California Women's Facility in Chowchilla, California, in the custody of the California Department of Corrections and Rehabilitation. Plaintiff names as defendants Dr. C. Burgdorff, Dr. Jonathan Harry, Pho Edward Olesky, and Dr. B. Wilkins[1] (collectively "Defendants"). A summary of Plaintiff's factual allegations follow.

///

---

[1] Plaintiff mistakenly sues defendant Wilkins as Wilkerson. (Notice of Removal, ECF No. 1 at 1 n.1.)

The gravamen of Plaintiff's Complaint is that she was wrongly labeled as a mental health patient, housed in the Mental Health Crisis Unit, and administered medication without her consent. On July 23, 2014, defendants Dr. Wilkins and Dr. Harry came to Plaintiff's cell and told her she was moving to a mental health crisis bed. Plaintiff asked why, but was not given an answer. Plaintiff was not hostile or argumentative, and never stated she had suicidal thoughts or concerns.

On July 24, 2014, Plaintiff was issued a 115 Rules Violation Report stating that she had caused an "Indian Burn" to CNA Solis. (ECF No. 1 at 11 ¶7.)[2] She was found not guilty of the charges in September 2014. Plaintiff's coworker stated that Plaintiff did not do it. Even after she was found not guilty, Plaintiff continued to be held in a mental health crisis bed until November 14, 2014.

Plaintiff was harassed for filing grievances about lack of medical care. Plaintiff reported the medical staff to the Division of Adult Institutions for not changing her diaper in a timely manner. It is standard in nursing facilities to change and check each patient every two hours. Defendants Dr. Harry and Dr. Wilkins tried to build a "paper trail" against Plaintiff based on false allegations, attempting to establish that Plaintiff was hostile and suffering from a mental health disorder from medical neglect. Plaintiff never said anything or displayed any behavior to warrant services from mental health staff.

Plaintiff alleges that she was subject to "cruel and unusual punishment, human rights violations, no equal rights, couldn't get access to materials for legal purpose," (ECF No. 1 at 8 ¶10), and "discrimination against my ethnicity and sexual orientation," (ECF No. 1 at 14).

Defendants Wilkins, Harry, Bergdorff, and Oleksy generated false mental health diagnoses and illegally had Plaintiff committed because of an allegation by inmate Marks stating that "something was thrown at her." (ECF No. 1 at 9 ¶1.) To be committed to a mental health crisis bed an inmate needs to claim to be suicidal. It is not true that Plaintiff was argumentative during the interview by Sgt. Johnson [not a defendant] regarding the allegation

---

[2] All page numbers cited herein are those assigned by the court's CM/ECF system and not based on the parties' pagination of their briefing materials

against Plaintiff, and the issue was resolved by Sgt. Johnson. Plaintiff was not disruptive on July 11, 2014. If the doctors had properly evaluated Plaintiff's symptoms they would have concluded that Plaintiff was suffering from hypokalemic periodic paralysis. Plaintiff claims that because of Defendants' actions she suffered physical pain and emotional distress.

Plaintiff requests compensatory and punitive damages.

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional

harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A. Personal Participation

Under section 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of her rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added). Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Iqbal, 556 U.S. at 676-77.

In the Complaint, Plaintiff fails to allege facts showing that individual defendants personally acted against her. Plaintiff fails to attribute any personal act to any individual defendant. Plaintiff cannot state a claim against these defendants unless she demonstrates in her allegations that each of them, identified by name, personally acted or failed to act, violating Plaintiff's rights. Plaintiff may not attribute liability to a group of defendants, but must "set forth specific facts as to each individual defendant's" deprivation of her rights. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Liability may not be imposed under a theory of *respondeat superior*, and there must exist some causal connection between the conduct of each named defendant and the violation at issue. Iqbal, 556 U.S. at 676-77; Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Lacey v. Maricopa County, 693 F.3d 896, 915-16 (9th Cir. 2012) (*en banc*); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 (2012). Therefore, Plaintiff fails to state any claims against any of the Defendants. Plaintiff shall be granted an opportunity to amend the complaint, to cure this deficiency.

### B. Eighth Amendment Medical Claim

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by

demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "'the defendant's response to the need was deliberately indifferent.'" Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en banc*) (internal quotations omitted). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." Id. at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . .

and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted). In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S. 97. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995); McGuckin, 974 F.2d 1050 (internal quotations omitted). In order to state a claim for violation of the Eighth Amendment, Plaintiff must allege sufficient facts to support a claim that the named defendants "[knew] of and disregard[ed] an excessive risk to [Plaintiff's] health . . . ." Farmer, 511 U.S. at 837.

To the extent that Plaintiff's claim is based on her disagreement with the doctors' assessment that she required mental health treatment, Plaintiff fails to state an Eighth Amendment claim. Plaintiff has not shown that the course of treatment the doctors chose was medically unacceptable under the circumstances, and that they chose this course in conscious disregard of an excessive risk to Plaintiff's health. To state a medical claim, Plaintiff must make factual allegations demonstrating that an individual Defendant knew that Plaintiff faced an excessive risk to her health and yet consciously disregarded the risk, causing Plaintiff harm.

Therefore, Plaintiff fails to state a cognizable Eighth Amendment medical claim against any of the Defendants. Plaintiff shall be granted leave to file an amended complaint curing the deficiencies in this claim.

### C. State Law Claims

Plaintiff also brings claims for fraud, negligence, and intentional infliction of emotional distress. These are state law claims, and violation of state law is not sufficient to state a claim for relief under § 1983. To state a claim under § 1983, there must be a deprivation of federal

constitutional or statutory rights. See Paul v. Davis, 424 U.S. 693 (1976). Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law.[3] See 28 U.S.C. § 1367. In this instance, the court fails to find any cognizable federal claims in the Complaint. Therefore, Plaintiff's state law claims fail.

### D. Due Process – Fourteenth Amendment

Plaintiff alleges that the Defendants used false information, claiming that Plaintiff violated rules and was argumentative and hostile, to commit her to the mental health unit.

The Due Process Clause protects prisoners from being deprived of liberty or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.

Liberty interests may arise from the Due Process Clause itself or from state law. Id. The Due Process Clause itself does not confer on inmates a liberty interest in avoiding "more adverse conditions of confinement." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation. See Hewitt v. Helms, 459 U.S. 460, 466-68 (1983); see also May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed and administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence) (quotations omitted)).

---

[3] Plaintiff must also plead the claim presentation requirement contained in California Government Code § 900 *et seq*. California's Government Claims Act establishes certain conditions precedent to the filing of a lawsuit against a public entity. State v. Superior Court (Bodde), 32 Cal. 4th 1234, 1237, 90 P.3d 116, 118 (2004). "[A] plaintiff must timely file a claim for money or damages with the public entity, (§ 911.2.), and the failure to do so bars the plaintiff from bringing suit against that entity, (§ 945.4.)." Id. Compliance with the claim presentation requirement is an element of the cause of action, Bodde, 32 Cal.4th at 1240, 13 Cal.Rptr.3d 534, 90 P.3d 116, is required, Mangold v. California Public Utilities Com'n, 67 F.3d 1470, 1477 (9th Cir. 1995), and "failure to file a claim is fatal to a cause of action," Hacienda La Puente Unified School Dist. Of Los Angeles v. Honig, 976 F.2d 487, 495 (9th Cir. 1992); City of Stockton v. Superior Court, 42 Cal.4th 730, 738 (Cal. 2007) at 738; Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 208-09 (Cal. 2007).

Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84, 115 S.Ct. 2293 (1995). Liberty interests created by state law are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484; Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

There is no due process right to be free from false disciplinary charges. The falsification of a disciplinary report does not state a standalone constitutional claim. Canovas v. California Dept. of Corrections, 2:14-cv-2004 KJN P, 2014 WL 5699750, n.2 (E.D. Cal. 2014); see e.g., Lee v. Whitten, 2:12-cv-2104 GEB KJN P, 2012 WL 4468420, *4 (E.D. Cal. 2012). There is no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)). "Specifically, the fact that a prisoner may have been innocent of disciplinary charges brought against him and incorrectly held in administrative segregation does not raise a due process issue. The Constitution demands due process, not error-free decision-making." Jones v. Woodward, 2015 WL 1014257, *2 (E.D. Cal. 2015) (citing Ricker v. Leapley, 25 F.3d 1406, 1410 (8th Cir. 1994); McCrae v. Hankins, 720 F.2d 863, 868 (5th Cir. 1983)). Therefore, Plaintiff has no protected liberty interest against being defamed or having false information in her file.

The Supreme Court has concluded that the Due Process Clause itself does not grant prisoners a liberty interest in remaining in the general population, see Sandin, 515 U.S. at 485-86 and Hewitt, 459 U.S. at 468 or in not losing privileges, Baxter v. Palmigiano, 425 U.S. 308, 322, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). However, in Vitek v. Jones, 445 U.S. 480, 493–94, 100 S. Ct. 1254, 1264, 63 L. Ed. 2d 552 (1980), the Supreme Court found that a prisoner had a liberty interest in freedom from involuntary commitment to a mental hospital and that "[a] criminal conviction and sentence of imprisonment extinguish an individual's right to freedom from confinement for the term of his sentence, but they do not authorize the State to classify

him as mentally ill and to subject him to involuntary psychiatric treatment without affording him additional due process protections." In <u>Washington v. Harper</u>, 494 U.S. 210, 221–222, 110 S.Ct. 1028, 1036–1037, 108 L.Ed.2d 178 (1990), the Court held that an inmate had a liberty interest in freedom from the involuntary administration of psychotropic drugs. Such deprivations implicate the Due Process Clause because they go beyond the "normal limits or range of custody which the conviction has authorized the State to impose." <u>Meachum v. Fano</u>, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). The Court in <u>Vitek</u> held that the "medical nature of the inquiry . . . does not justify dispensing with due process requirements. It is precisely "[t]he subtleties and nuances of psychiatric diagnoses" that justify the requirement of adversary hearings. <u>Vitek</u>, 445 U.S. at 495 (quoting <u>Addington v. Texas</u>, 441 U.S. 418, 429, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979)).

"When protected interests are implicated, the right to some kind of prior hearing is paramount . . . . [A] weighing process has long been a part of any determination of the *form* of hearing required in particular situations by procedural due process." <u>Neal v. Shimoda</u>, 131 F.3d 818, 830 (9th Cir. 1997) (quoting <u>Board of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2704–05 (1972) (footnotes omitted)). In <u>Neal</u>, where state prisoners claimed that the State was improperly labelling them as sex offenders, the court found that the plaintiff was constitutionally entitled to all of the process due under the standards set forth in <u>Wolff</u>, 418 U.S. 539. <u>Neal</u> 131 F.3d at 830 (citing <u>see</u> <u>Sandin</u>, 515 U.S. at 482, 115 S.Ct. at 2300 ("The time has come to return to the due process principles we believe were correctly established and applied in <u>Wolff</u> and <u>Meachum</u>."); <u>see</u> also <u>Keenan v. Hall</u>, 83 F.3d 1083 (9th Cir. 1996) (embracing this proposition in the context of a prisoner's suit to participate in a hearing to determine his re-classification)).

"In <u>Wolff</u>, the Supreme Court determined that inmates were entitled to procedural due process protections in disciplinary hearings that could result in the forfeiture of an inmate's good-time credits." <u>Neal</u>, 131 F.3d at 830. "After holding that such a result implicated a protected liberty interest, the Court turned to the question of what process the inmate was due." (<u>Id.</u>) "At the outset, the Court held that two elements were essential 'if the minimum

requirements of procedural due process are to be satisfied. These are advance written notice of the claimed violation and a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken.'" Id. (citing Wolff, 418 U.S. at 563, 94 S.Ct. at 2978).

In the event that an inmate such as Plaintiff, who was labeled as mentally ill and moved within the prison to a Mental Health Unit bed, is entitled to the same due process protections as an inmate transferred to an outside mental hospital. Plaintiff is entitled, at the least, to written notice, a hearing, an independent decision maker, and a written statement by the factfinder as to the evidence relied on and the reasons for re-housing the inmate. Vitek, 445 U.S. at 494.

Plaintiff alleges that on July 23, 2014, defendants Dr. Wilkins and Dr. Harry came to her cell and told her she was moving to a mental health crisis bed, and when Plaintiff asked why, she was not given an answer. (ECF No. 1 at 11 ¶6.) This is not sufficient to state a due process claim. Plaintiff must provide more information. Plaintiff has not indicated whether she received any due process protections, such as notice or a hearing, before or after Defendants came to her cell. Before the court can determine whether Plaintiff has a cognizable due process claim, Plaintiff must inform the court of the entire process used to label her as a mental patient, confine her in a mental health crisis bed, and administer medications to her without her consent.

Therefore, Plaintiff fails to state a cognizable due process claim against any of the Defendants. Plaintiff shall be granted leave to amend the complaint to cure the deficiencies in this claim.

### E. **Retaliation**

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim. Rizzo v. Dawson, 778 F.2d 5527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that

such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). The court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (9th Cir. 1995) (quoting Sandin, 515 U.S. at 482). The burden is on Plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Id. at 808.

Plaintiff satisfies the first element of a retaliation claim because she alleges that she was wrongfully placed in the mental health unit, which is an adverse action against Plaintiff. Plaintiff also satisfies the third element, because she exercised her protected right to file prison grievances against medical staff for failing to change her diaper every two hours. However, Plaintiff fails to satisfy the second element of a retaliation claim because she has not alleged facts showing that Defendants wrongfully placed her in the mental health unit *because* she filed grievances about her medical care. There are no factual allegations showing a causal connection between the filing of grievances and Plaintiff's housing placement, such as timing or behavior by a Defendant showing the Defendant was upset about the grievances. Moreover, Plaintiff has not alleged that Defendants' actions did not reasonably advance a legitimate correctional goal.

Therefore, Plaintiff fails to state a claim for retaliation. She shall be granted leave to amend the complaint to address the deficiencies in this claim discussed by the court.

### F. Discrimination – Fourteenth Amendment Equal Protection Claim

"The Equal Protection Clause requires the State to treat all similarly situated people equally." Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013) (citing see City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249,

87 L.Ed.2d 313 (1985)). "This does not mean, however, that all prisoners must receive identical treatment and resources." Hartmann at 1123 (citing see Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972); Ward v. Walsh, 1 F.3d 873, 880 (9th Cir. 1993); Allen v. Toombs, 827 F.2d 563, 568–69 (9th Cir. 1987)).

"To prevail on an Equal Protection claim brought under § 1983, Plaintiff must allege facts plausibly showing that '"the defendants acted with an intent or purpose to discriminate against [them] based upon membership in a protected class,"' Id. (citing see Thornton v. City of St. Helens, 425 F.3d 1158, 1166 (9th Cir. 2005) (quoting Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001)), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff claims human rights violations against her and discrimination because of ethnicity and sexual orientation. However, Plaintiff has not alleged facts demonstrating that she was intentionally discriminated against on the basis of her membership in a protected class, or that she was intentionally treated differently than other similarly situated inmates without a rational relationship to a legitimate state purpose. Therefore, Plaintiff fails to state a claim for relief for violation of her right to equal protection.

### G. Access to Courts Claim

Plaintiff alleges that she "couldn't get access to materials for [a] legal purpose." (ECF No. 1 at 8 ¶10.) These allegations suggest a claim for denial of access to the courts.

Inmates have a fundamental constitutional right of access to the courts and prison officials may not actively interfere with a plaintiff's right to litigate. Lewis v. Casey, 518 U.S. 343, 346 (1996); Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009). Courts have traditionally differentiated between two types of access claims, those involving the right to affirmative assistance, and those involving inmate's right to litigate without *active interference.* Silva v. De Vittorio, 658 F.3d 1090, 1102 (emphasis added). The right to *assistance* is limited to direct

criminal appeals, habeas petitions, and civil rights actions. Lewis, 518 U.S. at 354 (emphasis added).

Prisoners have the right to pursue claims that have a reasonable basis in law or fact, without active interference. Silva, 658 F.3d at 1103–04 ((finding that repeatedly transferring the plaintiff to different prisons and seizing and withholding all of his legal files constituted active interference). Mere inconvenience to Plaintiff resulting from lost, misplaced, or confiscated legal documents will not suffice to support a constitutional claim. Id. at 1103–04. Inmates do not have the right to a law library or legal assistance. Lewis, 518 U.S. at 351. Law libraries and legal assistance programs are only the means of ensuring access to the courts. Id. Because inmates do not have "an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury by establishing that his prison's law library or legal assistance program is sub-par in some theoretical sense." Id.

Defendants' actions must have been the proximate cause of actual prejudice to Plaintiff. Silva, 658 F.3d at 1103–04. To state a viable claim for relief, Plaintiff must show that she suffered an actual injury, which requires "actual prejudice to contemplated or existing litigation" by being shut out of court. Nevada Dep't of Corr. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing Lewis, 518 U.S. at 348, 351); Christopher v. Harbury, 536 U.S. 403, 415 (2002); Phillips, 588 F.3d at 655. The complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it. Christopher, 536 U.S. 403.

Here, Plaintiff has not shown that she suffered an actual injury as described above. Therefore, Plaintiff fails to state a claim for denial of access to the courts.

### H. Fifth and Eleventh Amendment Claims

Generally, the Fifth Amendment concerns the grand jury, double jeopardy, self-incrimination, due process, and takings. U.S. CONST. amend. V. The Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state. Brooks v. Sulphur Springs Valley Elec. Co., 951 F.2d 1050, 1053 (9th Cir. 1991) (internal citations

omitted); see also Tennessee v. Lane, 541 U.S. 509, 517 (2004); Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267-68 (1997); Clark v. California, 123 F.3d 1267, 1269 (9th Cir. 1997).

Plaintiff indicates on the front of the Complaint that she brings claims under the Fifth and Eleventh Amendments. (ECF No. 1 at 6.) However, the court finds no allegations in Plaintiff's Complaint suggesting a claim for violation of either of these amendments. Plaintiff shall be granted leave to amend the Complaint to clarify these claims.

## V. CONCLUSION AND ORDER

For the reasons set forth above, the court finds that Plaintiff fails to state any cognizable claims in the Complaint. Therefore, the court shall dismiss the Complaint, with leave to file an amended complaint curing the deficiencies in her claims found by the court.[4]

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." The court will provide Plaintiff with time to file an amended complaint curing the deficiencies identified above. Plaintiff is granted leave to file an amended complaint within thirty days. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

The amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 556 U.S. at 678; Jones, 297 F.3d at 934. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555). As noted above, there is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 677. Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of her rights. Jones, 297 F.3d at 934 (emphasis added). Plaintiff should note that although she has been given the opportunity to amend, it is not for the purpose of adding new defendants for unrelated issues. Plaintiff should

---

[4] For any claims dismissed with prejudice and without leave to amend, Plaintiff is not required to include them in a subsequent amended complaint to preserve them for appeal. See Lacey, 693 F.3d at 928. However, for any claims voluntarily dismissed, the court will consider those claims to be waived if not repled. Id.

also note that she has not been granted leave to add allegations of events occurring after the initiation of this suit on May 4, 2017.

Plaintiff is advised that an amended complaint supercedes the original complaint, Lacey, 693 F. 3d at 907 n.1 (*en banc*), and it must be complete in itself without reference to the prior or superceded pleading. Local Rule 220. Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Complaint is dismissed for failure to state a claim, with leave to amend;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a First Amended Complaint curing the deficiencies identified in this order;
4. Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:17-cv-00634-DAD-GSA-PC; and
5. Plaintiff's failure to comply with this order shall result in a recommendation that this case be dismissed for failure to state a claim.

IT IS SO ORDERED.

Dated:   **April 16, 2018**                **/s/ Gary S. Austin**
                                      UNITED STATES MAGISTRATE JUDGE